UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   7/29/2016
```

-------------------------------------------------------- X
MANUEL LORA,                                           :
                                                       :
                              Plaintiff,               :
                                                       :                    14-CV-8121 (VEC)
                -against-                               :
                                                       :                    OPINION & ORDER
CITY OF NEW YORK, DUSTIN GENCO and                     :
MARTIN MARINEZ,                                        :
                                                       :
                              Defendants.              :
                                                       :
-------------------------------------------------------- X

VALERIE CAPRONI, District Judge:

 Plaintiff, Manuel Lora, has asserted federal civil rights claims and state tort claims

against the City of New York and New York City Police Department ("NYPD") Detectives

Dustin Genco and Martin Marinez.[1]  Now pending before the Court is Defendants' Motion for

Summary Judgment (the "Motion").  For the reasons set forth below, Defendants' Motion is

GRANTED.

## BACKGROUND

 In July 2013, a task force established by the NYPD, the New York State Police and the

United States Drug Enforcement Agency ("DEA") began surveillance of apartment 6C located at

2160 Matthews Avenue in the Bronx, New York ("Apartment 6C").  Def. 56.1 Stmt. ¶ 1-2.[2]

Based on a tip from a confidential source, Detectives Genco and Marinez suspected the unit was

being used as a heroin mill.  Declaration of Randolph Hall in Support of Defendants' Motion for

---

[1]  Pursuant to the parties' stipulation, Plaintiff has withdrawn his claims for municipal liability against the
City of New York pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Dkt. 35.

[2]  The Court refers to Defendants' Statement Pursuant to Local Rule 56.1 (Dkt. 39) as "Def. 56.1 Stmt."; to
Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (Dkt. 37) as "Def. Mem."; 
and to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. 47) as
"Pl. Opp."

Summary Judgment ("Hall Decl."), Exhibit C, Transcript of Deposition of Martin Marinez dated August 20, 2015 ("Marinez Dep.") at 24:4-24, 27:14-16; Hall Decl., Ex. B, Transcript of Deposition of Dustin Genco dated July 21, 2015 ("Genco Dep.") at 20:10-11.

In order to conduct surveillance, the task force installed a hidden video camera that recorded individuals entering and exiting Apartment 6C. Genco Dep. at 32:2-34:7. During a period of approximately one week in late July and early August, Genco observed various individuals coming in and out of Apartment 6C with "heavy-weighted" bags, remaining in the apartment for long periods of time during the day and not staying overnight. In Genco's experience, that sort of pattern of traffic was consistent with the operations of a heroin mill. Genco Dep. at 41:5-24, 58:5-59:24.

During the surveillance period, but prior to the date of Plaintiff's arrest, Genco observed Plaintiff enter and exit Apartment 6C on July 31, 2013 and again on August 1, 2013. Genco Dep. at 66:3-12, 143:21-145:9. In his deposition, Plaintiff admitted that he had visited Apartment 6C on July 31, 2013, for approximately four hours and had visited the apartment again on August 1, 2013, for approximately two hours. Hall Decl., Ex. D, Transcript of Deposition of Manuel Lora dated June 24, 2015 ("Lora Dep.") at 70:7, 73:1-74:3, 75:7-9. Plaintiff claims that on each of those occasions, he entered the apartment through the front door, which was unlocked and slightly ajar, Lora Dep. at 74:21-22, and then watched television in the living room while he waited for Ms. Priscilla Marrero to meet him, although she never appeared, Lora Dep. at 75:7-15.

On August 6, 2013, Genco was monitoring the live feed of Apartment C's hallway from a patrol car parked near 2160 Matthews Avenue. Genco Dep. at 52:14-53:8. A man approached the vehicle, looked at Genco several times, retreated and immediately used a cell phone to make

a call.  Genco Dep. at 73:19-74:5, 81:22-82:3, 150:10-151:6.  At this point, Genco told Marinez that he believed the surveillance operation had been compromised.  Marinez Dep. at 49:13-17. Shortly thereafter, Genco observed, via the live video feed, Plaintiff entering Apartment 6C and then, several minutes later, exiting the apartment with two women later identified as Ms. Amaris Orama and Ms. Marrero.  Def. 56.1 Stmt. ¶ 20; Genco Dep. at 73:19-74:4, 75:21-76:13, 80:22-81:2; Marinez Dep. at 49:18-50:6.  Plaintiff testified in his deposition that, on the day of his arrest, he had stayed in Apartment 6C for only six to eight minutes.  Lora Dep. at 52:9-23, 53:4-8.  The timestamp on the task force's video shows that Plaintiff exited Apartment 6C at approximately 3:44 p.m. on August 6, 2013.  Genco Dep. at 80:22-81:6.

Genco, Marinez and a DEA agent promptly found Plaintiff and the two women approximately two blocks from 2160 Matthews Avenue.  Def. 56.1 Stmt. ¶ 23; Genco Dep. at 81:10-17.  Marinez recognized one of the women as someone he had seen exiting Apartment 6C during a prior day's investigation.  Marinez Dep. at 53:6-12.  Genco and Marinez stopped the three individuals, searched Plaintiff and then questioned him.  Lora Dep. at 81:4-82:15.  At the time, both officers were in plain clothes and neither was holding a firearm.  Lora Dep. at 80:1-21.  Plaintiff asserts that he told the officers that he had briefly visited the apartment, but that he did not live there and did not know anything about the apartment.  Lora Dep. at 81:15-82:15; Hall Decl., Ex. E, Lora 50-H Hearing ("Lora Hearing") at 23:14-16.  Marinez claims, however, that during questioning, Plaintiff denied having ever visited the apartment and insisted that he and the women had merely been waiting for a friend in a nearby park.  Marinez Dep. at 57:11-18.

Defendants asked Plaintiff to consent to a search of Apartment 6C, which Plaintiff refused to do.  Lora Dep. at 81:8-25; Lora Hearing at 16:5-17:2.  Defendants then pushed

Plaintiff to the ground and told him to remain on the sidewalk which, according to Plaintiff, he did for thirty minutes to an hour.  Pl. Opp. at 10; Lora Dep. at 82:23-84:23; Genco Dep. at 84:18-22.  Defendants then separately questioned the two women who had left Apartment 6C with Plaintiff.  Lora Dep. at 84:9-18.  Defendants recovered a key to Apartment 6C from Ms. Marrero and obtained written consents to search from both Ms. Marrero and Ms. Orama.  Marinez Dep. at 58:5-19; Hall Decl., Exs. G and H; Declaration of Eugene Bellin ("Bellin Decl."), Ex. 1, Criminal Complaint.  Ms. Marrero and Ms. Orama told the officers that they had been hired to clean Apartment 6C, and Ms. Orama stated that there were "some drugs" in the apartment.  Hall Decl., Ex. F, Investigatory Notes of Det. Genco; Bellin Decl., Ex 1.  At that point, Genco and Marinez handcuffed Plaintiff, put him in a DEA vehicle and transported him to 2160 Matthews Avenue.  Marinez Dep. at 58:5-60:2, 71:13-18; Lora Dep. at 89:4-11.

Genco and Marinez began to search Apartment 6C at 4:58 p.m., according to the timestamp on the surveillance video recordings.  Genco Dep. at 89:20-90:13.  During the search, at least one other DEA officer guarded Plaintiff, who remained handcuffed in the DEA vehicle.  Marinez Dep. at 74:22-25.  The officers' search of the apartment revealed a living room and a second room, separated from the living room by a short hallway and an open door.  Genco Dep. at 92:14-20, 94:12-15.  In the second room, the officers discovered in plain view thirteen kilograms of heroin, as well as packing materials and related paraphernalia for processing and selling heroin, such as strainers and branding stamps.  Genco Dep. at 99:15-24, 92:14-93:24, 96:20-23, 100:11-13.  Plaintiff claims that he remained handcuffed in the DEA vehicle for approximately two hours prior to and through the conclusion of the search.  Lora Dep. at 92:7-9.

Upon completing the search, Marinez transported Plaintiff to Central Booking.  Marinez Dep. at 87:19-88:7.  The next day, Genco signed a criminal complaint charging Plaintiff with

4

Criminal Possession of a Controlled Substance in the First and Third Degrees and Criminally

Using Drug Paraphernalia in the Second Degree.  Bellin Decl., Ex. 1.  Plaintiff was arraigned on

August 7, 2016, Bellin Decl., Ex. 2, and then detained, Lora Dep. at 102:2-103:3.  A grand jury

later indicted Plaintiff for the charged crimes, but the charges were subsequently dismissed when

the Honorable Bruce Allen, J.S.C., found the grand jury minutes to be legally insufficient.  *See*

Bellin Decl., Ex. 3, Minutes of Proceeding of December 6, 2013, before Honorable Bruce Allen,

J.S.C. under Indictment No. 4038/2013 in Part 5.  Plaintiff filed the Complaint in this action on

October 8, 2014.

## DISCUSSION

### I.    **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Courts "'construe the facts in the light most favorable to the non-moving party and

resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Delaney v.*

*Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C.*

*Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009) (alteration omitted)).  The

nonmoving party, however, "must do more than simply show that there is some metaphysical

doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated

speculation."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations and

internal quotation marks omitted).  Rather, the nonmoving party must come forward with

"specific facts showing that there is a genuine issue for trial."  *Sista v. CDC Ixis N. America,*

*Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (per curiam) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987)).  "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment must be denied.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.   There Is No Genuine Issue of Material Fact with Regard to Plaintiff's Claim of False Arrest

A claim brought pursuant to 42 U.S.C. § 1983 for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  In analyzing § 1983 false arrest claims, courts look to the law of the state in which the arrest occurred.  *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under New York law, "a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification."  *Williams v. N.Y.C.*, No. 02 CIV. 3693(CBM), 2003 WL 22434151, at *3 (S.D.N.Y. Oct. 23, 2003) (quoting *Weyant*, 101 F.3d at 852), *aff'd*, 120 F. App'x 388 (2d Cir. 2005).

In evaluating the legality of police searches and seizures, a court "must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter."  *People v. Howard*, 12 N.Y.S.3d 708, 710 (4th Dep't 2015) (quoting *People v. Nicodemus*, 669 N.Y.S.2d 98 (4th Dep't 1998)).  An arrest of a suspect is only lawful when supported by probable cause.  *Dunaway v. New York*, 442 U.S. 200 (1979).  But not every seizure or detention of a suspect amounts to an arrest.  *People v. Hicks*, 68 N.Y.2d 234, 239 (1986).  Police may conduct a brief stop and detention of a suspicious individual, without a warrant, in order to "maintain the status quo momentarily" while taking reasonable steps to

obtain more information "in light of the facts known to the officer at the time." *Adams v.*

*Williams*, 407 U.S. 143, 146 (1972) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

### A.  Plaintiff's Initial Stop Was Justified by Reasonable Suspicion

"Under the Fourth Amendment, an officer may conduct a brief investigatory detention

(commonly known as a '*Terry* stop') as long as the officer has reasonable suspicion 'that the

person to be detained is committing or has committed a criminal offense.'" *United States v.*

*Compton*, No. 15-942, slip op. at 8 (2d Cir. July 19, 2016) (quoting *United States v. Bailey*, 743

F.3d 322, 332 (2d Cir. 2014)); *see also Terry*, 392 U.S. at 22.  Reasonable suspicion requires

"specific and articulable facts which, taken together with rational inferences from those facts,

provide detaining officers with a particularized and objective basis for suspecting wrongdoing."

*Compton*, No. 15-942, slip op. at 8 (quoting *Bailey*, 743 F.3d at 332); *see also Hayes v. Florida*,

470 U.S. 811, 816.  In evaluating the officers' conduct, courts should consider "the totality of the

circumstances," *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000), and view the

evidence from the perspective of an experienced law enforcement officer, *see United States v.*

*Cortez*, 449 U.S. 411, 418 (1981).

Genco and Marinez concede that, at the time of their initial stop, they did not have

probable cause to arrest Plaintiff.  Defendants argue, however, and the Court agrees, that

Defendants' initial stop of Plaintiff was supported by reasonable suspicion.  Genco and Marinez

formed a belief, based on information from a confidential informant and subsequent surveillance,

that Apartment 6C was being used as a heroin mill.  Over the prior week, Genco had seen

various individuals entering and exiting the apartment with heavy bags and never staying

overnight.  Genco Dep. at 41:5-24, 58:5-59:24.  On two occasions prior to August 6, 2013,

Genco had seen Plaintiff letting himself into the apartment and then leaving the apartment after

remaining inside for several hours, and on one occasion prior to August 6, 2013, Marinez had

seen Ms. Marrero or Ms. Orama exiting the apartment, all of which suggested that Plaintiff and

his female companions had access to and were familiar with the apartment.  Genco Dep. at 66:3-

12, 143:21-145:9; Marinez Dep. at 53:6-12.

On the date of Plaintiff's arrest, Genco saw Plaintiff exit Apartment 6C with Ms. Marrero

and Ms. Orama and walk away from 2160 Matthews Avenue shortly after observing conduct that

led him to believe the surveillance operation may have been compromised.  Given these facts

and circumstances, Genco reasonably suspected that Plaintiff and one or more of his companions

were involved in criminal activity, and had left Apartment 6C after being warned of possible

police surveillance.  Defendants' decision to stop and question Plaintiff and the women regarding

their knowledge or involvement in the activities of Apartment 6C was not based on an

impermissibly "inarticulate hunch," *Terry*, 392 U.S. at 22, but rather was amply supported by the

evidence available to Defendants at the time of the stop.

**B.  Defendants' Subsequent Detention of Plaintiff for Questioning on the Sidewalk
Was Justified by The Officers' Continuing Investigation**

In determining whether an investigatory stop is sufficiently intrusive to evolve into an

arrest requiring probable cause, courts should consider the "amount of force used by the police,

the need for such force, the extent to which an individual's freedom of movement was restrained

. . . the number of agents involved, whether the target of the stop was suspected of being armed,

the duration of the stop, and the physical treatment of the suspect, including whether or not

handcuffs were used." *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (quoting *United

States v. Perea,* 986 F.2d 633, 645 (2d Cir. 1993) (internal quotation marks and citations

omitted)).  Courts may also consider whether a warrant existed for activity related to the suspect,

whether officers transported the suspect to another location and whether officers isolated the

suspect in an enclosed space. *Michigan v. Summers*, 452 U.S. 692, (1981).  No one of these

factors is determinative, *United States v. Fiseku*, No. 15 CR. 384(PAE), 2015 WL 7871038, at *7

(S.D.N.Y. Dec. 3, 2015) (quoting *United States v. Newton*, 369 F.3d 659, 673, 674 (2d Cir.

2004)), and "the reasonableness of the level of intrusion [depends on] the totality of the

circumstances," *Fiseku*, 2015 WL 7871038, at *7 (quoting *Posr v. Doherty*, 944 F.2d 91, 98 (2d

Cir. 1991)); *see also Hicks*, 68 N.Y.2d at 239.

      Courts have generally found that stops become *de facto* arrests when they are unduly

intrusive or when no articulable law enforcement need justifies the length or manner of

defendant's detention. *See, e.g.*, *People v. Ryan*, 12 N.Y. 3d 28, 31 (2009) (detaining defendant

in a police car with handcuffs for thirteen minutes was unjustified because defendant did not

need to be held for effective photo lineup identification); *People v. Robinson*, 728 N.Y.S.2d 421,

426 (1st Dep't 2001) (handcuffing suspect and involuntarily transporting him to a police station

where he was held in a cell for over two hours transformed stop into an arrest); *People v. Baily,*

627 N.Y.S.2d 381, 381 (1st Dep't 1995) (confining suspect in a holding cell for one hour at the

police precinct turned a stop into an arrest), *leave to appeal denied*, 86 N.Y.2d 790 (1st Dep't

1995); *People v. Rivers*, 514 N.Y.S.2d 292, 292 (4th Dep't 1987) (detaining defendant at the

police station for over two hours was unlawful because it was based on less than probable cause).

When it appears police officers are prolonging detention or employing intrusive means beyond

what is necessary "in order to quickly obtain information either confirming or dispelling the

officers' suspicion," courts will likely find that an arrest has occurred. *Robinson*, 728 N.Y.S.2d

at 424.

      On the other hand, courts have held in many instances that prolonged detention and

questioning do not constitute an arrest where the duration and degree of restraint imposed are not

overly intrusive in relation to the officers' investigation.  *See, e.g.*, *People v. Pinkney*, 548 N.Y.S.2d 226, 227 (1st Dep't 1989) (finding a thirty minute detention for questioning, including photographing the suspect and transporting him to the police precinct, was within the bounds of a lawful investigatory stop); *United States v. Glover*, 957 F.2d 1004 (2d Cir. 1992) (upholding detention of defendant in security office for approximately thirty minutes to verify his identification and to await arrival of narcotics dog to search bags); *People v. Ortiz*, 648 N.Y.S.2d 75, 75 (1st Dep't 1996), *rev'd on other grounds*, 90 N.Y.2d 533 (1997) (one and a half hour delay in conducting a showup based on reasonable suspicion "was within acceptable boundaries"); *People v. Maybell*, 603 N.Y.S.2d 161, 161 (1st Dep't 1993), *leave to appeal denied*, 82 N.Y.2d 927 (1994) (police stopped and detained suspect at the crime scene for up to three and a half hours in order for police to arrange a showup identification).  In addition, courts have found that continued detention is justified when the preliminary questioning supports reason to believe a suspect is involved in criminal activities.  *Bailey*, 743 F.3d at 337.

      Here, while certain factors weigh in Plaintiff's favor, considering the totality of the circumstances, the Court finds that Defendants' questioning and detention of Plaintiff on the sidewalk did not constitute an arrest.  First, the degree of restraint was minimal.  Defendants approached Plaintiff wearing plain clothes, without guns drawn, and told Plaintiff to sit on a sidewalk in public view less than two blocks from the apartment he had just visited.  Plaintiff's hands were not cuffed at the time, and he was not otherwise restrained in any way.  Although Plaintiff was restricted in his movement by the order to sit and remain on the sidewalk, such a limitation is not, without more, sufficiently intrusive to constitute an arrest.  *United States v. Gori*, 230 F.3d 44, 56 (2d Cir. 2000) ("It is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop.").  Second, while Plaintiff asserts that he was

thrown or pushed to the ground, he does not claim to have suffered any injuries and there is no evidence that he sought medical treatment, suggesting that, while the officers may have treated him roughly, there is no basis for a finding that the officers used an extreme amount of force.

Finally, Plaintiff estimates that he was detained on the sidewalk for between 30 and 60 minutes.  While not *de minimis*, this period of time falls within the bounds of a permissible *Terry* stop.  *See, e.g.*, *Ortiz*, 648 N.Y.S.2d at 75.  The record shows that the Defendants were questioning Plaintiff's companions during this time, and Plaintiff does not contend that the Defendants did anything to unnecessarily delay or prolong their investigation.  Because Genco had seen Plaintiff let himself into Apartment 6C and then exit after spending several hours inside on two prior occasions, it was reasonable for the officers to become increasingly suspicious when Plaintiff minimized his knowledge of the apartment.[3]  Because the Court finds that Plaintiff's detention on the sidewalk was minimally intrusive and lasted no longer than necessary for the officers to verify or disprove the existence of criminal activity, the sidewalk detention constituted a *Terry* stop that was supported by the officer's reasonable suspicion.

### C.  Defendants Had Probable Cause to Arrest Plaintiff After Obtaining Consent to Search and Learning That There Were Drugs in the Apartment

Probable cause constitutes justification and is therefore an absolute defense to a claim of false arrest.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Provost v. City of Newburgh*, 262 F.3d 146, 156-57 (2d

---

[3]     There is a question of fact as to how forthcoming Plaintiff was at that time.  Plaintiff asserts he told officers he "went right in and out" of Apartment 6C before they stopped him.  Lora Dep. at 82:7-15.  On the other hand, the officers assert that Plaintiff told them he "never been" to Apartment 6C.  Genco Dep. at 84:7-9; Marinez Dep. at 57:11-18.  Even accepting as true Plaintiff's version of events, as the Court must when evaluating a motion for summary judgment, Plaintiff clearly minimized his connection to the apartment.

Cir. 2001) (citing *Weyant*, 101 F.3d at 852).  "When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis in *Panetta*) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).

Here, the *Terry* stop of Plaintiff ripened into an arrest when the detectives handcuffed him and transported him to the vicinity of the apartment.  By that point, however, the Defendants had probable cause to arrest him.  It is undisputed that Ms. Orama had told the police that there were drugs in Apartment 6C and had given consent to search the apartment.  Because Ms. Orama was implicating herself in criminal behavior by admitting to knowledge of drugs in the apartment and consenting to Defendants' search, the officers had no reason to question the reliability of Ms. Orama's statements.  *Cf. Little v. N.Y.C.*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007) ("It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness who they reasonably believe to be telling the truth.").  In addition to Ms. Orama's admission, Genco had seen Plaintiff let himself into Apartment 6C and remain inside for extended periods of time on several occasions over the course of approximately one week.  Based on a confidential tip, as corroborated by Ms. Orama's admission and a recognized pattern of individuals entering and exiting the apartment during daytime hours with weighted bags, Defendants reasonably believed Apartment 6C was being used as a heroin mill. On the day of his arrest, Defendants saw Plaintiff enter and quickly leave Apartment 6C shortly after Defendant Genco observed conduct that led him to conclude that the investigation may have been compromised.  Notably, Plaintiff left the apartment and continued walking away from 2160 Matthews Avenue with two women who later admitted to having access to and control over the apartment, and one of whom acknowledged the presence of drugs there.  During questioning,

12

Plaintiff also minimized his connection to Apartment 6C despite having been there three times in the past week and having spent at least six hours inside.

While Plaintiff challenges Defendants' assertions regarding the information available to them on the date of his arrest—for example by questioning Ms. Orama's statements to the extent they were made out of Plaintiff's earshot—Plaintiff offers no additional facts to rebut or controvert the asserted facts that support a finding that the Defendants had probable cause to arrest the Plaintiff. Because a non-movant "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554, Plaintiff cannot create a genuine issue of material fact by speculating that Defendants may have fabricated Ms. Orama's statements or by suggesting that Defendants should have assumed that Plaintiff was an innocent-though-regular invitee to the heroin mill. *See Sista*, 445 F.3d at 169 (nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial"); *Douglas v. N.Y.C.*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) ("[A] determination of whether probable cause to arrest existed may be made as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." (internal quotation marks omitted)). Because Plaintiff has failed to offer specific facts presenting a genuine issue of material fact as to the existence of probable cause following Defendants' questioning of Ms. Orama and Ms. Marrero, Defendants' Motion is GRANTED with respect to Plaintiff's false arrest claim.[4]

---

[4]      Because the Court finds that Defendants had probable cause to arrest Plaintiff *before* they found drugs in Apartment 6C, it need not separately address the parties' arguments regarding whether there was probable cause for Plaintiff's arrest *after* Defendants discovered drugs in the apartment. For the avoidance of doubt, however, the Court notes that the correct standard is not, as Plaintiff's argue, whether the available evidence was sufficient to convict Plaintiff for the crimes charged, but rather whether the available evidence was sufficient to support probable cause to believe that Plaintiff had committed a crime. *See United States v. Coiscou*, 793 F. Supp. 2d 680, 685 (S.D.N.Y. 2011) ("[T]he facts and circumstances from which probable cause may be inferred need not reach the level of evidence necessary to support a conviction, but they must be more than rumor, suspicion, or even a strong reason to suspect." (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) and *Henry v. United States,* 361 U.S. 98, 101 (1959) (internal quotations omitted)); *see also United States v. Heath*, 455 F.3d 52, 57 (2d Cir.

**III.    There is No Evidence to Support Plaintiff's Malicious Prosecution Claim**

To prevail on a malicious prosecution claim under Section 1983, a plaintiff must establish

the elements of a state law malicious prosecution claim and also show a violation of his rights

under the Fourth Amendment.  *See Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009).  To

establish a malicious prosecution claim under New York law, a plaintiff must prove "(1) the

initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and

(4) actual malice as a motivation for defendant's actions." *Manganiello v. N.Y.C.*, 612 F.3d 149,

161 (2d Cir. 2010) (citations and internal quotations omitted); *see also Murphy v. Lynn*, 118 F.3d

938, 947 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998).  While the parties agree that the

relevant proceedings terminated in Mr. Lora's favor,[5] the first, third and fourth elements of

Plaintiff's malicious prosecution claim are in dispute.  Because Plaintiff cannot satisfy at least

the third and fourth elements of his malicious prosecution claim, the claim fails.

With regard to the third prong, "probable cause is a complete defense to any action for

false arrest or malicious prosecution in New York," *Dickerson v. Napolitano*, 604 F.3d 732, 751

(2d Cir. 2010), and, by extension, a defense to liability under Section 1983, *see Roberts*, 582

F.3d at 420.  The relevant determination is whether there was probable cause to believe the

Plaintiff committed a crime and, hence, a prosecution should be commenced.  *See Posr v. Court

Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999).  To sustain a malicious prosecution claim

where probable cause existed to make the arrest, a plaintiff must show that defendants learned of

---

2006) ("[T]hose who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense." (citation omitted)).

[5]      Bellin Decl., Ex. 3, Minutes of Proceeding of December 6, 2013, before Honorable Bruce Allen, J.S.C. under Indictment No. 4038/2013 in Part 5, at 14-15.

intervening facts between the arrest and the initiation of prosecution that undermined the initial probable cause determination.  *See Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).  For the reasons described in Section II(C), *supra*, Plaintiff's arrest was amply supported by probable cause.  Because Plaintiff has not proffered evidence of any facts discovered between the arrest and the charging decision that might undermine Defendants' initial probable cause determination, Plaintiff has not created a question of fact whether the Defendants lacked probable cause to commence a criminal proceeding.[6]

With regard to the fourth element, Plaintiff has failed to cite any evidence from which a reasonable factfinder could conclude that Defendants acted with actual malice.  "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Pinter v. N.Y.C.*, 976 F. Supp. 2d 539, 559 (S.D.N.Y. 2013) (quoting *Lowth*, 82 F.3d at 573).  Plaintiff's sole argument is that malice may be inferred from the absence of probable cause to initiate the criminal proceedings.  *See* Pl. Opp. at 19 (citing *Lowth*, 82 F.3d at 573).  Because the Court has found there was probable cause, there is no basis to impute to Defendants any wrongful or improper motive.  Plaintiff has, therefore, failed to create a question of fact as to this element.

With respect to the first element, while police officers can "initiate" prosecution by filing charges or other accusatory instruments, *see Cameron v. N.Y.C.*, 598 F.3d 50, 63 (2d Cir. 2010),

---

[6]    Furthermore, indictment by a grand jury creates a rebuttable presumption of probable cause in cases of alleged malicious prosecution.  *Manganiello*, 612 F.3d at 162 (citing *Savino v. N.Y.C.*, 331 F.3d 63, 73 (2d Cir. 2003) and *Colon v. N.Y.C.*, 60 N.Y.2d 78, 82 (1983)).  Although here, Justice Allen found the grand jury minutes to be legally insufficient, Bellin Decl. Ex. 3, the Court has no basis independently to review the grand jury minutes and, in any event, finds that probable cause has been established based on the evidence presented in this action, for the reasons articulated *supra*.

in the absence of evidence that the officers misled or pressured the prosecutor, judge or grand jury, an "intervening exercise of independent judgment" will typically break the chain of causation between the officer's conduct and a plaintiff's alleged harm, *see, e.g.*, *Townes v. N.Y.C.*, 176 F.3d 138, 147 (2d Cir. 1999) (citing cases); *Williams*, 2003 WL 22434151, at *6 ("[o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution."). *But c.f. Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) ("[T]he chain of causation need not be considered broken if [a government agent] deceived the subsequent decision maker or could reasonably foresee that his misconduct [would] contribute to an independent decision that results in a deprivation of liberty." (alteration in original) (citation and internal quotation marks omitted)); *Zahrey v. Coffey,* 221 F.3d 342, 352 (2d Cir. 2000) ("Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").

    In the absence of any evidence of wrongdoing by Genco and Marinez, it is not clear why Defendants should be subject to liability for initiating a criminal prosecution against Plaintiff, even though a judge subsequently determined that insufficient evidence may have been presented to the grand jury to warrant an indictment.  Nonetheless, because the Court finds that Plaintiff has failed to present evidence to create a genuine question of material fact with respect to the third and fourth elements of his malicious prosecution claim, the Court need not resolve this

issue.  Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's

malicious prosecution claim.[7]

## IV.    Defendants are Entitled to Qualified Immunity

Even if there were a question of fact whether probable cause existed for Plaintiff's arrest

and subsequent prosecution, Defendants would still be entitled to summary judgment if there is

no question of fact that they are entitled to qualified immunity.  Police officers are entitled to

qualified immunity if "(1) [their] conduct d[id] not violate clearly established statutory or

constitutional rights of which a reasonable person would have known, or (2) it was 'objectively

reasonable' for [Defendants] to believe that [their] actions were lawful at the time of the

challenged act."  *Jenkins v. N.Y.C.*, 478 F.3d 76, 96 (2d Cir. 2007) (citations omitted).  Qualified

immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law."

*Butz v. Economou,* 438 U.S. 478, 507 (1978).  As applied in the arrest context, the Second

Circuit has held that, even without probable cause, an "arresting officer will still be entitled to

qualified immunity from a suit for damages if he can establish that there was 'arguable probable

cause' to arrest."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  "Arguable probable cause

exists if either (a) it was objectively reasonable for the officer to believe that probable cause

existed, or (b) officers of reasonable competence could disagree on whether the probable cause

test was met."  *Id.* at 743 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991);

---

[7]      Plaintiff also asserts false imprisonment and malicious prosecution claims against Genco and Marinez
under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and under state tort law.
While it is unclear from the record whether Defendants were deputized as federal agents, and are thus subject to
*Bivens* liability, "[a] claim under *Bivens* is substantially similar to a claim under . . . § 1983 such that courts
incorporate § 1983 case law into *Bivens* claims."  *Hallock v. Bonner*, 567 F. Supp. 2d 334, 337 (N.D.N.Y. 2008),
(citing *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)), *aff'd*, 343 F. App'x 633 (2d Cir. 2009).  Because
Plaintiff's *Bivens* claims against Defendants rely on the same facts as the § 1983 false arrest and malicious
prosecution claims, summary judgment is appropriately GRANTED with respect to Plaintiff's *Bivens* claims.
Similarly, because Plaintiff's common law claims for false imprisonment and malicious prosecution are based on the
same facts as the § 1983 claims, summary judgment is GRANTED as to those claims as well.

*Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002)).

Viewing the facts in the light most favorable to Plaintiff, *see Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)); *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 576 (S.D.N.Y. 2002), the Court finds, for the reasons set forth *supra*, that no reasonable juror could conclude that Defendants' actions were objectively unreasonable or conclude that officers of reasonable competence could not believe that the probable cause test was met.  In other words, here, there are no facts in dispute that are material to a determination of reasonableness.  *Thomas*, 165 F.3d at 143 (2d Cir. 1999) (citation omitted); *see also Lennon*, 66 F.3d at 420.  The Court therefore finds that, even if Defendants were not entitled summary judgment on Plaintiff's false arrest and malicious prosecution claims, they would be entitled to qualified immunity.[8]

## V.   Plaintiff's State Claims For Assault and Battery are Dismissed for Lack of Supplemental Jurisdiction

Plaintiff has asserted a claim for assault and battery under state law.  Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over non-federal claims where the court "has dismissed all claims over which it has original jurisdiction." The Second Circuit has held that while section 1367(c) is permissive, rather than mandatory, "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011).

---

[8]     Additionally, the Second Circuit has noted that "the same principles of qualified immunity apply in section 1983 actions against state officials and Bivens actions against federal officials."  *Krebs v. Tutelian*, No. 97 CIV. 0554(MBM), 1998 WL 108003, at *5 (S.D.N.Y. Mar. 12, 1998) (quoting *Ayeni v. Mottola*, 35 F.3d 680, 688 n.10 (2d Cir. 1994)).  Therefore, qualified immunity also applies as to the *Bivens* claims against Defendants.

Plaintiff's common law claims for assault and battery are accordingly dismissed without prejudice to Plaintiffs' ability to renew them in a state court of competent jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully requested to terminate all open motions and close the case.

**SO ORDERED.**

**Date:  July 29, 2016**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**